FILED

2020 Dec-23  AM 09:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **GARRETT HUBBARD,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:19-CV-1881** |
| | ) | |
| **COWABUNGA, INC., d/b/a** | ) | |
| **DOMINO'S, et al.,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Cowabunga Incorporated d/b/a Domino's ("Cowabunga") moves for summary judgement (doc. 17) on the basis that Plaintiff Garrett Hubbard is judicially estopped from pursuing his claims. For the reasons stated below, the court finds that Hubbard is not barred by judicial estoppel. So Cowabunga's motion is denied.

### Background

This case arises from a vehicular wreck, in which Tristin Barnes ("Barnes") allegedly hit Hubbard during Barnes' shift delivering Domino's pizza. Hubbard alleges that Barnes failed to yield the right of way when turning left.

Hubbard sued Barnes in state court. They settled for $50,000 (apparently the limit of Barnes's insurance policy). The state court approved the settlement through the usual means for a minor—a Guardian Ad Litem appointment, pro ami hearing, and subsequent order. The entire case took less than three months.

More than a year later, Hubbard sued Cowabunga and others in the same state court. Cowabunga removed the case to this court. Hubbard's claims include negligent and wanton hiring, training, and supervision of Barnes, as well as negligent and wantonness of Barnes under respondeat superior. Hubbard seeks damages for physical injuries, mental anguish and emotional distress, past and future medical treatment and costs, temporary loss of the use of his leg following the accident and permanent damage to his leg. Doc. 14 at 11.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a

2

genuine issue for trial. *Id.* at 324. In reviewing a motion for summary judgment, the court must draw all reasonable inferences in favor of the non-moving party. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000).

## STATEMENT OF LAW: JUDICIAL ESTOPPEL

State law governs judicial estoppel in diversity cases. *Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc.*, 44 F.3d 925, 930 (11th Cir. 1995). The Alabama Supreme Court has adopted the factors set out by the U.S. Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742 (2001). *Ex parte Ala. Bank*, 883 So. 2d 1236, 1244-45 (Ala. 2003). For judicial estoppel to apply:

    (1) a party's later position must be 'clearly inconsistent' with its earlier position;

    (2) the party must have been successful in the prior proceeding so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and,

    (3) the party seeking to assert an inconsistent position must derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* (citations omitted). "The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Middleton v. Caterpillar Indus., Inc.*, 979 So. 2d 53, 59 (Ala. 2007) (citations omitted).

## ANALYSIS

To satisfy the first element of judicial estoppel, Cowabunga must show that Hubbard has taken "clearly inconsistent" positions on his injuries in his two lawsuits. But the parties dispute Hubbard's position in both lawsuits. Discovery has not started in this lawsuit, so the court cannot know the extent of Hubbard's claimed injuries.

As for the Barnes lawsuit, other than Hubbard's 5-sentence pro ami complaint (doc. 18-2), Cowabunga does not offer any statements made by Hubbard, his guardians, or his attorneys. Instead, Cowabunga relies on two statements made by the state court judge in his pro ami order and judgment:

- "The court has been advised that the minor Plaintiff [Hubbard] has recovered satisfactorily and that he has no permanent injuries."

- "Mike Hubbard [Hubbard's father] has reported to the Court that he understands the terms of the settlement [and] represented to the Court that, in his opinion, it is in the best interest of the minor child to accept the settlement proposed. Mr. Hubbard understands that any outstanding medical charges associated with the treatment provided to the minor children, which are currently pending, will be satisfied from the gross proceeds of this settlement."

Doc. 18-3 at 4-5. The court parses both statements below. But first, the court notes that, with one exception (permanent injuries), Hubbard disputes Cowabunga's reading of the state court order. Doc. 33 at 1-2. Having read the documents from that case (docs. 18-2, 18-3, 18-4), the court finds that Hubbard's disputes are genuine. And under Rule 56, the court must give Hubbard's reading the benefit of the doubt.

Cowabunga generally argues that, based on the two statements quoted above, Hubbard told the state court that he was fully recovered from his injuries and the $50,000 Barnes settlement covered all of his expenses, so Hubbard should be barred from arguing in this lawsuit that he has outstanding or permanent injuries and/or that he needs to recover from Cowabunga to compensate his damages. The court reviews the cited statements from the state court's order to determine if summary judgment is warranted on judicial estoppel grounds.

### A. Recovered satisfactorily

The state court order says that "[t]he court has been advised that the minor Plaintiff has recovered satisfactorily and that he has no permanent injuries." Doc. 18-3 at 4. "Recovered satisfactorily" is a nebulas term. Cowabunga contends that it means that Hubbard physically recovered from his injuries and would suffer no more damages. As such, Hubbard does not have any damages to form this lawsuit on. But this an inference; not an undisputed fact. "Recovered satisfactorily" is not synonymous with "recovered fully" or "recovered everything." Perhaps Hubbard has not fully recovered, either in pain or money. Because the court must view the facts in the light most favorable to Hubbard, the court finds that Hubbard has not taken a clearly inconsistent position under the first prong of *New Hampshire*.

### B.   Property Damage

Cowabunga is right; Hubbard did not allege property damage in the Barnes complaint. Doc. 18-2. But as Hubbard points out, silence on an issue is not a position. *L.B. Whitfield, III Family LLC v. Whitfield*, 150 So. 3d 171, 183 (Ala. 2014). In the Barnes lawsuit, Hubbard took no position on property damage; in this case, he does. That is not, by definition, inconsistent. So this statement fails the first prong of *New Hampshire*.

### C. Medical Expenses

Cowabunga next focuses on the following statement from the state court order: "Mr. Hubbard understands that any outstanding medical charges associated with the treatment provided to the minor children, which are currently pending, will be satisfied from the gross proceeds of this settlement." Doc. 18-3 at 5. But contrary to Cowabunga's reading, the state court did not say that "all medical expenses would be covered by the settlement funds" (doc. 18-10), and there is no transcript of what Hubbard's father said. So this fact is disputed.

The court finds that Hubbard's interpretation of this statement is plausible—*i.e.,* the state court gave Mr. Hubbard "a cautionary reminder … of the purposes for which the settlement is to be used." Doc. 33 at 8. And it's the interpretation that better reflects this court's jurisdiction. To justify removing this case to federal court,

Case 4:19-cv-01881-CLM   Document 52   Filed 12/23/20   Page 7 of 12

Cowabunga assured this court that Hubbard's claims exceeded $75,000. *See* Doc. 1 at 10 ("Defendant Cowabunga denies liability in any amount, but does not dispute that the amount in controversy exceeds $75,000). That statement would be dubious if Hubbard's father swore to the state court that the Barnes settlement would cover all of his son's past, present, and future physical injuries and mental anguish— particularly when Hubbard's father received only $5,000 of the $50,000 settlement to use "for the benefit and welfare of the minor Plaintiff."[1] Doc. 18-3 at 5-6.

In sum, there is a genuine dispute whether the Barnes settlement was enough to cover all of Hubbard's damages—a dispute with jurisdictional consequences. Perhaps Cowabunga will later prove that it was. But for now, all inferences are to be made in favor of Hubbard. *See Reeves*, 530 U.S. at 135. So this statement also fails the first element of *New Hampshire*.

### D. Permanent Injuries

Finally, Cowabunga focuses on the back half of this quote from the state court order: "The court has been advised that the minor Plaintiff has recovered satisfactorily and that he has no permanent injuries." Doc. 18-3 at 4. Cowabunga argues that the statement that Hubbard "has no permanent injuries" precludes him from claiming permanent injuries here. This one is harder.

---

[1] $16,993 of the $50,000 settlement was used to pay Hubbard's attorney's fee and costs. Doc. 18-3 at 5. The state court clerk held the remaining $28,007 to give Hubbard when he turned 18. *Id.* at 6.

1. Unlike the previous statements, there is only one way to read "he has no permanent injuries." And Hubbard does not dispute that his current allegation that he suffered "permanent damage to his leg" (doc. 14 ¶36) is clearly inconsistent with a previous statement that "he has no permanent injuries."

Instead, Hubbard argues that this court cannot know "<u>who</u> actually testified and whether the statements were made under oath." Doc. 33 at 7. But the court does not find the 'who actually testified' dispute to be genuine. In the sentence that precedes the "no permanent injuries" statement, the state court says that it had been "advised … by Mike Hubbard, Garrett Hubbard, and the Guardian *ad litem* as to the extent of the injuries." Doc. 18-3 at 4. So the statement came from Hubbard, someone who represented him, or both.

As for the oath, neither party cites Alabama caselaw that says whether the prior inconsistent position must be under oath. Nor has the court found a post-*New Hampshire* Alabama case that answers the question. The closest thing the court found was the following statement from a one Justice concurrence: "Judicial estoppel asks whether a party has given factually inconsistent testimony under oath in a prior proceeding and has intentionally misled the court to gain an unfair advantage." *Middleton*, 979 So.2d at 65 (Parker J. concurring). While the Eleventh Circuit generally requires the prior position be given under oath, the Court has also

said that "[t]he requirement that the prior consistent statement be made under oath is not 'inflexible or exhaustive.' More important than whether the statements was under oath is whether they are intended to mislead or deceive the court." *Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 643 n.4 (11th Cir. 2019).

So giving a definitive answer on the first *New Hampshire* element is difficult. The two positions are inconsistent; the oath is the problem. If Alabama law requires an oath, then Cowabunga cannot satisfy the first element because Cowabunga offers no evidence that someone gave the prior position under oath, and the court must draw all factual inferences in Hubbard's favor. If Alabama does not require an oath, then Cowabunga could succeed—unless Alabama, like the Eleventh Circuit, requires proof of an intent to mislead or deceive the court if there is no oath. If that's the case, summary judgment is not warranted because discovery has yet to occur, so Cowabunga cannot sufficiently prove Hubbard's intent in the prior proceeding.

2. The court runs into similar problems on the second *New Hampshire* element, success in the prior proceeding. Hubbard recovered $50,000 from Barnes, and someone related to Hubbard (maybe even Hubbard himself) made the "no permanent injuries" statement during the pro ami hearing, and the state court included the statement in its order accepting the settlement. So Cowabunga may be right that, if Hubbard had instead told the state court that he was permanently injured,

the court might not have approved the Barnes settlement. If that's the case, allowing Hubbard to claim permanent injuries in this lawsuit would create the perception that the state court was misled at best; lied to at worst.

But that's a big 'if'. The court does not have enough facts to know what role permanent damages played in the state court's approval of the Barnes settlement. As Hubbard points out, the point of a pro ami hearing is to determine whether a settlement is in the minor's best interest—not to determine whether a particular amount of damages sufficiently compensates particular claims. Hubbard claims that $50,000 was the limit on Barnes's insurance policy, not either party's valuation of Hubbard's claim against Barnes. Doc. 33 at 8. Because Hubbard is the non-moving party, the court must assume that fact is true. And assuming Hubbard's facts are true, the court cannot find that someone telling the state court that Hubbard had "no permanent injuries" led to Hubbard's "success" in the Barnes lawsuit under the second *New Hampshire* factor.

And that's the problem with applying judicial estoppel to settlements; it may not be clear whether a settling party "succeeded" on the relevant issue. Settlements are compromises, not definitive rulings. That's why both the Alabama Supreme Court and the Eleventh Circuit have yet to decide whether a settlement—as opposed to a verdict or court ruling—amounts to success under the second *New Hampshire*

factor. *See Henriksen v. Roth*, 12 So.3d 652, 659 (Ala. 2008) (leaving the question open); *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1336 n.8 (11th Cir. 2005) (same). The court will not tread where the Alabama Supreme Court has not, at least not yet, because the court has insufficient facts to determine whether the statement about Hubbard's permanent injuries played any role in securing the Barnes settlement.

3. If Cowabunga could establish the first two *New Hampshire* elements, Cowabunga would likely establish the third. If Hubbard successfully secured the $50,000 settlement by lying to the state court about his injuries, then Cowabunga could show that Hubbard gained an unfair advantage in this lawsuit. But again, there are too many unknowns to grant summary judgment on the other two elements.

4. Finally, Hubbard rightly notes that the Alabama Supreme Court has cautioned that "by adopting the *New Hampshire* test for the application of judicial estoppel, this Court did not abandon the concerns that a detriment may be imposed on a plaintiff with a potentially meritorious claim and that a defendant may receive an unwarranted windfall by the application of the doctrine of judicial estoppel." *Middleton*, 979 So. 2d at 63. If Hubbard is right that the Barnes settlement was merely an agreement between Hubbard and Barnes's insurer that Hubbard's claims were worth at least the $50,000 policy limit, then Hubbard may be right that rigid

11

application of the *New Hampshire* test to cap Hubbard's recovery at $50,000 would stifle a "potentially meritorious claim" and give Cowabunga "an unwarranted windfall." *Id.* But as the court has repeatedly noted, the court cannot know at this point because discovery has yet to begin, so the requisite facts are not presented.

For all of these reasons, the court denies summary judgment for permanent damages. Cowabunga may re-raise the issue in post-discovery motions, should the facts support it.

\* \* \*

In short, too many questions exist to grant summary judgment at this point. The parties will begin discovery soon, and Cowabunga has the right to file another Rule 56 motion after discovery closes, in accordance with the court's yet-to-be-entered discovery schedule.

## CONCLUSION

For the reasons stated above, the court **DENIES** Cowabunga's motion for summary judgment (doc. 24).

**DONE** and **ORDERED** on December 23, 2020.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE