FILED
2023 May-01  AM 11:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**GARRETT HUBBARD,**
  Plaintiff,

**v.**                                                      **Case No. 4:19-cv-1881-CLM**

**COWABUNGA, INC.,**
  Defendant.

## MEMORANDUM OPINION

A Domino's Pizza driver was turning left into the Domino's parking lot when he hit Garrett Hubbard, who was driving his motorcycle in the other lane. Hubbard sued Cowabunga, Inc. (the owner of this Domino's location) for negligence, wantonness, and negligent and wanton hiring, training, and supervision.

Cowabunga moved for summary judgment on all counts. (Doc. 72). In his response to the motion for summary judgment, Hubbard stated that he does not oppose granting summary judgment for Cowabunga on the negligent and wanton hiring, training, and supervision claims. (Doc. 76, p. 7). So the court **GRANTS** Cowabunga's motion for summary judgment on those claims. (Doc. 72).

For the reasons stated below, the court will **GRANT** Cowabunga's motion for summary judgment on the wantonness claim and **DENY** the motion for summary judgment on the negligence claim. (Doc. 72).

## BACKGROUND

Garrett Hubbard took his motorcycle out for a ride with a video camera attached to his helmet. That video shows him pulling out of a Sonic parking lot and colliding with Tristin Barnes, a Domino's Pizza delivery driver. Barnes was travelling in the opposite direction and began turning left into the

Domino's parking lot when Hubbard exited the Sonic parking lot. The video shows that Barnes did not use his turn signal when he turned.

The video also shows that Hubbard exited the Sonic parking lot in the opposite direction of arrows painted on the ground. Before he exited the parking lot, Hubbard checked the road for oncoming cars but did not come to a complete stop. A few seconds after Hubbard exited the parking lot, Barnes ran into him with his car while making his turn. Hubbard was travelling 27 MPH[1] at the time of the collision. Barnes claims the sun was in his eyes, and he could not see Hubbard.

Hubbard sued Barnes—but not Cowabunga—in Alabama state court, alleging negligence and wantonness. The parties settled that case for $50,000. Hubbard later filed this federal case against Cowabunga. Cowabunga moved for summary judgment, arguing that Hubbard is judicially estopped from pursuing his claims because of the state court settlement. This court denied that motion, holding that Cowabunga did not satisfy the elements of judicial estoppel. But the court noted that "Cowabunga may re-raise the issue in post-discovery motions, should the facts support it." (Doc. 52, p. 12).

## STANDARD OF REVIEW

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[1] Cowabunga contends that the speed limit was 25 MPH, while Hubbard says it isn't clear whether the sped limit was 25 or 40 MPH.

## DISCUSSION

Cowabunga's argument for summary judgment is three-part. It first argues that the court should grant summary judgment on the wantonness claim because Barnes' actions do not meet the high standard required under Alabama law for a claim of wantonness to go to trial. It next argues that the negligence claim should fail because Hubbard was contributorily negligent in the accident. And finally, it renews its judicial estoppel argument that Hubbard should be unable to recover at all in this lawsuit because of his positions and the settlement in the state court action.

### I.    Wantonness

Hubbard alleges that Barnes acted wantonly by failing to use his turn signal, failing to see Hubbard, hitting Hubbard despite his familiarity with the road, and the lack of risk of harm to himself from running into the motorcycle. Cowabunga argues that summary judgment is appropriate on this count because Barnes' actions do not meet the high standard required for a wantonness claim

1. <u>Legal Standard</u>: "Wantonness" is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007). "[I]t is not essential that the actor should have entertained a specific design or intent to injure the plaintiff, only that the actor is 'conscious' that injury will likely or probably result from his actions." *Id.* In fact, "[a] wantonness count should go to the jury if there is any evidence to support a finding of wantonness." *Bishop v. Poore*, 475 So. 2d 486, 487 (Ala. 1985). But "[w]antonness requires more than a mere showing of some form of inadvertence on the part of the driver; it requires a showing of some degree of conscious culpability." *Scott v. Villegas*, 723 So. 2d 642, 643 (Ala. 1998).

2. <u>Analysis</u>: Hubbard argues that Barnes' failure to use his turn signal, failure to see him, running into Hubbard despite his familiarity with the road, and lack of risk of harm from hitting the motorcycle all support a finding of wantonness. The video shows that Barnes began his turn into the Domino's

parking lot as Hubbard entered the road and collided with Hubbard two seconds later:





According to Hubbard, the court should allow his wantonness claim to proceed to the jury because this court has done so in a case in which the defendant violated a rule of the road. *See Vasser v. Tezi Express LLC*, 2022 WL 19625 (N.D. Ala. Jan. 3, 2022). But that case relied on Alabama caselaw that

established that running a stop sign was sufficient evidence for a wantonness claim to survive a summary judgment. *See Clark v. Black*, 630 So. 2d 1012 (Ala. 1993). The plaintiff has not cited, and the court is unaware of, any Alabama caselaw that establishes that the failure to use a turn signal is sufficient evidence to support a finding of wantonness.

The court agrees with Cowabunga that summary judgment is appropriate on the wantonness count because no reasonable juror could find that Barnes had "some degree of conscious culpability" and still ran into Hubbard. *Scott v. Villegas*, 723 So. 2d 642, 643 (Ala. 1998). Instead, the video establishes that Hubbard darted quickly into his lane, the events happened quickly, the sun was in Barnes' sight, and Barnes repeatedly said that "I didn't see you" after the accident. No reasonable juror who watches these events could find that Barnes was conscious that he was about to hit and injure Hubbard when he turned. So the court **GRANTS** Cowabunga's motion for summary judgment on the wantonness count.

## II.    Contributory Negligence

1. <u>Legal Standard</u>: Because contributory negligence is a defense, not an element of the claim, "the question of contributory negligence is normally one for the jury," not dispositive motions. *Crook v. Allstate Indem. Co.*, 314 So. 3d 1188, 1198 (Ala. 2020). In Alabama, courts can summarily dismiss a claim on contributory negligence grounds if the defendant proves the plaintiff "(1) had knowledge of the dangerous condition; (2) had an appreciation of the danger under the surrounding circumstances; and (3) failed to exercise reasonable care, by placing himself in the way of danger." *Ridgeway v. CSX Transp., Inc.*, 723 So. 2d 600, 606 (Ala. 1998). "[I]t is only when the facts are such that all reasonable men must draw the same conclusion that contributory negligence is ever a question of law for the court." *Wyser v. Ray Sumlin Const. Co., Inc.*, 680 So. 2d 235, 238 (Ala. 1996).

2. <u>Analysis</u>: Cowabunga argues that Hubbard's negligence contributed to the accident because he exited the Sonic parking lot in the opposite direction of arrows on the pavement, failed to come to a complete stop before entering

the road, failed to yield to Barnes, was speeding[2], and entered the road at a sharp angle. Screenshots from the video highlight these arguments:



(Hubbard exits the parking lot opposite of the circled arrow)



(Hubbard does not come to a complete stop before entering the road)

---

[2] Hubbard was travelling 27 MPH at the time of impact. The parties dispute whether the speed limit was 25 or 40 MPH at the location of the accident.



(Hubbard's "sharp" angle and failure to yield to Barnes, who has crossed the center line)

Cowabunga also argues that Hubbard violated Ala Code §32-5A-153 when he pulled into the road without checking for oncoming traffic. That code section reads:

> The driver of a vehicle emerging from an alley, building, private road or driveway within a business or residence district shall stop such vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across such alley, building entrance, road or driveway, or in the event there is no sidewalk area, shall stop at the point nearest the street to be entered where the driver has a view of approaching traffic thereon.

Ala Code §32-5A-153.

Hubbard responds that Cowabunga cannot show he had a conscious appreciation of danger at the moment the incident happened, nor does any evidence establish that Hubbard's actions were a proximate cause of the incident. He points out that he looked both ways when he entered the road, saw Barnes driving without his turn signal on, turned onto the road, and was then hit by Barnes. He also points out that he was never cited by law enforcement for the accident.

While a jury *could* find that Hubbard was contributorily negligent, the evidence presented is not "such that all reasonable men must draw the same conclusion." *Wyser*, 680 So. 2d at 238. So the court denies Cowabunga's motion for summary judgment on contributory negligence grounds.

## III.   Judicial Estoppel

Finally, Cowabunga asserts that Hubbard is not entitled to relief under any theory given statements made in the state court case—a case Hubbard's father settled on his behalf because Hubbard was a minor at the time. Cowabunga raised a judicial estoppel defense in its March 2020 motion for summary judgment (doc. 18), which the court denied. (Doc. 52). But the court noted that "Cowabunga may re-raise the issue in post-discovery motions, should the facts support it." (*Id.*)

### A. Previous ruling

The court noted in its first opinion that, to invoke collateral estoppel, Cowabunga must prove three things:

> (1) a party's later position must be 'clearly inconsistent' with its earlier position;

> (2) the party must have been successful in the prior proceeding so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and,

> (3) the party seeking to assert an inconsistent position must derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Ex parte First Alabama Bank*, 883 So. 2d 1236, 1244–45 (Ala. 2003); *New Hampshire v. Maine,* 532 U.S. 742, 121 (2001). Here's how the court analyzed these requirements at the time.

1. <u>Inconsistent Positions</u>: The court started by looking at four of Hubbard's previous positions: (1) whether Hubbard recovered satisfactorily, (2) Hubbard's new claim of property damage, (3) Hubbard's medical expenses, and (4) permanent injuries.

The first issue is whether Hubbard had fully recovered at the time of the state court settlement. The State Court order said that "[t]he court has been advised that the minor Plaintiff has recovered satisfactorily and that he has no permanent injuries." This court reasoned that "recovered satisfactorily" is not synonymous with "recovered fully" or "recovered everything." So the court did not find Hubbard was now taking an inconsistent position by claiming to still be injured.

As for Hubbard's claim for property damage here, the court noted that Hubbard did not allege property damage in the state court complaint, and silence on an issue is not a position. So this court held that claiming property damage now is not inconsistent with the state court claims.

As for medical expenses, the State Court order said that "Mr. Hubbard understands that any outstanding medical charges associated with the treatment provided to the minor children, which are currently pending, will be satisfied from the gross proceeds of this settlement." This court pointed out that the state court did not say that "all medical expenses would be covered by the settlement funds." And this court reasoned that Cowabunga's removing this case to federal court—and thus asserting that Hubbard's claims exceeded $75,000—would be dubious if Hubbard's father swore to the state court that the Barnes settlement would cover all of his son's past, present, and future physical injuries and mental anguish. So the court held that there is a genuine dispute whether the Barnes settlement was enough to cover all of Hubbard's damages.

Finally, as for permanent injuries, the State Court noted that "[t]he court has been advised that the minor Plaintiff has recovered satisfactorily and that he has no permanent injuries." According to Cowabunga, this statement precludes Hubbard from now claiming that he has permanent injuries. As

explained below, this is the only point that Cowabunga provides new evidence to support.

2. <u>Success in Prior Proceeding</u>: Hubbard recovered $50,000 from Barnes in the state court case. But this court reasoned that it did not have enough facts to know what role permanent damages played in the state court's approval of the Barnes settlement. As Hubbard pointed out, the point of a pro ami hearing is to determine whether a settlement is in the minor's best interest—not to determine whether a particular number of damages sufficiently compensates claims. Hubbard claimed that $50,000 was the limit on Barnes's insurance policy, not either party's valuation of Hubbard's claim against Barnes. Thus, this court could not find that someone telling the state court that Hubbard had "no permanent injuries" led to Hubbard's "success" in the Barnes lawsuit under the second *New Hampshire* factor.

This court also noted that settlements are compromises, not definitive rulings. That's why both the Alabama Supreme Court and the Eleventh Circuit have yet to decide whether a settlement—rather than a verdict or court ruling—amounts to success under the second *New Hampshire* factor. See *Henriksen v. Roth*, 12 So. 3d 652, 659 (Ala. 2008) (leaving the question open); *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1336 n.8 (11th Cir. 2005) (same).

3. <u>Unfair Advantage or Detriment</u>: Finally, this court reasoned that if Cowabunga could establish the first two *New Hampshire* elements, Cowabunga would likely establish the third. If Hubbard successfully secured the $50,000 settlement by lying to the state court about his injuries, then Cowabunga could show that Hubbard gained an unfair advantage in this lawsuit. But ultimately this court held that there were too many unknowns on the other two elements to grant summary judgment.

That leads us to Cowabunga's renewed argument.

## B. Current Ruling

Cowabunga renews each of its previous arguments for judicial estoppel. Cowabunga also cites to two TikTok videos that show Hubbard running and participating in an airsoft game. (Docs. 77-2, 77-3). According to Cowabunga

and a Doctor who reviewed the videos, these show that Hubbard does not appear to have any issues with his leg. Cowabunga says this shows that Hubbard's current claim that he suffered permanent damage to his leg conflicts with his previous statement in state court that he "recovered satisfactorily."

But Hubbard testified during discovery here that the injuries still affect him. Hubbard said that he has arthritis, has to take breaks from crouching at work, is unable to fully exercise with his injured leg, and that his leg gave out on him during work and during a PT test, almost causing him to fail. He also said that physicians told him that his injury healed but will affect him for the rest of his life. And the orthopedic surgeon who operated on him and who treated him at work said there are lingering effects from the injury. Thus, Hubbard says his position here is that his injuries are not "permanent" but will bother him for the rest of his life.

Hubbard's recent testimony about the current state of his injuries is not "clearly inconsistent" with what his father told the state court, and description of Hubbard's injuries in the state court's order does not give Hubbard unfair advantage against Cowabunga here. So the court finds that Hubbard is not judicially estopped from seeking damages for his injuries here.

Because Cowabunga offers no other new evidence, the court maintains its previous ruling about property damage, medical expenses, and the sufficiency of Hubbard's settlement with Barnes.

In short, the court **DENIES** Cowabunga's motion for summary judgment on judicial estoppel grounds.

## CONCLUSION

For the reasons stated above, the court **GRANTS** Cowabunga's motion for summary judgment on the wantonness and negligent and wanton hiring, training, and supervision claims. The court **DENIES** Cowabunga's motion for summary judgment on contributory negligence and judicial estoppel grounds, so the negligence claim will proceed to trial. (Doc. 72).

**DONE** and **ORDERED** on May 1, 2023.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE